**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Tennant Company,
a Minnesota corporation,

Plaintiff,

v.

National Building Maintenance Company,
Inc., a Puerto Rico corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-411 ADM/AJB

---

Renee Jackson, Esq., Fulbright & Jaworski, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Michael Mitchell, Esq., Briggs & Morgan, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

Tennant Company ("Tennant") brought this suit against Defendant National Building Maintenance Company, Inc. ("NBM"), seeking a declaratory judgment in Hennepin County District Court. NBM removed the action to this Court. On April 30, 2002, the undersigned United States District Judge heard Defendant NBM's Motion to Dismiss [Doc. No. 3] for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons given below, NBM's Motion is granted.

## II. BACKGROUND

Tennant, a Minnesota corporation with its principal place of business in Golden Valley, Minnesota, designs, manufactures and sells industrial and commercial cleaning equipment.

FILED 6-28-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Compl. ¶ 1. NBM is a Puerto Rican corporation located in Ponce, Puerto Rico. Caraballo Aff. ¶ 2. NBM provides commercial and industrial maintenance, and sells commercial cleaning equipment parts and products through its affiliated company, NBM Chemical Co., Inc., in Puerto Rico, the Dominican Republic, and the Republic of Costa Rica. *Id.* ¶ 3. NBM operates exclusively in those locations, and has no presence in Minnesota. *Id.* ¶¶ 12-13. NBM is not registered to do business in Minnesota, has not sold product in Minnesota, and does not contact businesses in Minnesota. *Id.*

In July, 1992, NBM entered a Distributor Agreement with Castex Industries, Inc. ("Castex"), and Nobles Industries, Inc. ("Nobles"). *Id.* ¶¶ 4-5; Caraballo Aff. Ex. A. Both Castex and Nobles are Michigan corporations with their principal place of business in Holland, Michigan. All of NBM's contacts with Castex and Nobles were between Puerto Rico and Michigan. Caraballo Aff. ¶¶ 5-7.

In 1995, Tennant acquired Castex and Nobles, becoming successor-in-interest under the Distributor Agreement with NBM.[1] *Id.* ¶ 8. Performance under NBM's Distributor Agreement remain unchanged after Tennant's acquisition of Castex and Nobles. *Id.* NBM received products shipped from Tennant's newly acquired Michigan location. *Id.* ¶ 10. Tennant billed NBM from its Michigan location and NBM sent all payments to Tennant's office in Michigan until 2000, when it began sending payments to Tennant's office in Chicago, Illinois. *Id.* NBM never contacted Tennant in Minnesota or traveled to Minnesota in connection with the Distributor Agreement. Caraballo Aff. ¶ 12.

---

[1] Castex and Nobles were not completely merged into Tennant until January 1, 2001. *See* Def. Mem. in Opp'n., at 3; Jackson Aff. ¶ 2, Ex. A.

On October 24, 2001, and December 20, 2001, Tennant sent letters from its Anaheim, California address to NBM purporting to terminate the Distributor Agreement. On February 1, 2002, Tennant commenced this action, seeking a declaratory judgment that its termination of the agreement was effective and legal. On February 19, 2002, NBM filed a Complaint in the Superior Court of Puerto Rico, Ponce Part, Case No. JDP2002-0093(602), seeking damages for Tennant's alleged wrongful termination of the Distributor Agreement under the Puerto Rico Dealer Law 75, of 1964, as amended. *See* Caraballo Aff. Ex. B. Before this Court is NBM's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## III. DISCUSSION

"[P]ersonal jurisdiction over a nonresident defendant is proper only if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). To maintain personal jurisdiction, a defendant's conduct and connection with the forum state must be such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Generally, an assessment of personal jurisdiction involves two independent inquiries: (1) whether the applicable state long-arm statute, Minnesota Statute § 543.19, is satisfied, and (2) whether the exercise of jurisdiction is consistent with the requisites of due process. *See Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). The Eighth Circuit recognized that Minnesota has

interpreted its long-arm statute to be coextensive with the limits of due process. *See Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995); *see also Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985). Thus, the question is whether exercising personal jurisdiction over NBM is consistent with federal due process.

The due process clause requires that there be sufficient "minimum contacts" between a nonresident defendant and the forum state. *International Shoe*, 326 U.S. at 316. The Eighth Circuit applies a five-factor test when analyzing the constitutional requirements for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522-23 (8th Cir. 1996). The first three factors are closely interrelated, and may be considered together. *Id.* at 523. The first three factors are of primary importance, while the final two are "secondary factors." *Minnesota Min. and Mfg.*, 63 F.3d at 697.

Specific jurisdiction[2] may be found where a defendant has "purposely directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472. Defendants who "'reach out beyond one state' and create continuing relationships and obligations with the citizens of another

---

[2] Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8 & 9 (1984).

state are subject to regulation and sanctions in the other State for consequences of their actions." *Burger King*, 471 U.S. at 475. There must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Tennant argues that it managed and supervised performance of the Distributor Agreement from Minnesota, and alleges that NBM knew Tennant's headquarters are in Minnesota. However, Tennant fails to identify even one document NBM sent to Minnesota during its relationship with Tennant. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. at 253; *see Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982). Tennant's unilateral performance in Minnesota is insufficient to support the exercise of personal jurisdiction over NBM. It is the *defendant's* contacts with the forum state that are of importance in determining whether in personam jurisdiction exists. *Id.* NBM lacks both quality contacts and a quantity of contacts with Minnesota.

NBM continued distribution of products under the agreement after Tennant acquired Castex and Nobles. The mere existence of a contract with a forum resident does not provide the requisite contacts between a nonresident party and the forum state. *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir. 1988). NBM sent no orders to Minnesota, received no deliveries from Minnesota, sent no payments to Minnesota, and sold no products in Minnesota. NBM cannot be said to have purposely directed its business activities to Minnesota. Because NBM lacks sufficient minimum contacts with Minnesota, exercise of personal jurisdiction over

NBM is rejected.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant NBM's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 3] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.